UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAWRENCE HENDERSON,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-2042** |
| **T&M BOAT RENTALS, LLC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants Catlin Indemnity Company ("Catlin"); Mr. Spotty L.L.C. ("Mr. Spotty"); and T&M Boat Rentals, LLC. ("T&M").[1] Plaintiff Lawrence Henderson opposes the motion.[2] For the reasons that follow, the motion for summary judgment is **GRANTED** in part and **DENIED** in part.

### I.   FACTUAL & PROCEDURAL BACKGROUND[3]

Plaintiff was employed by T&M as a deckhand from May 2014 until March 2016.[4] Plaintiff alleges that on December 27, 2015, while working on the M/V ERIN W, a vessel owned by Mr. Spotty, he "was injured when he attempted to lift a cable which was hanging over the side of a barge . . . in the water."[5] According to his complaint, Plaintiff sustained "severe bodily injuries, including possible ruptured and/or herniated lumbar and cervical discs and nerve damage" as a result of this incident.[6] Plaintiff contends his injuries were

---

[1] R. Doc. 49.
[2] R. Doc. 59.
[3] Plaintiff filed his original complaint on March 10, 2017. R. Doc. 1. Since his initial filing, Plaintiff has filed a first, second, and third supplemental and amended complaints. R. Docs. 4, 11, 24. The facts as stated in this section are derived from these filings.
[4] R. Doc. 1 at ¶¶ V–VII; R. Doc. 49-2 at 124:1–2.
[5] *Id.*
[6] *Id.* at IX.

1

the direct result of Defendants' negligence and the unseaworthiness of the M/V ERIN W.[7]

He seeks damages for:

1. Past and future medical expenses;
2. Past and future wage loss or diminution of earning capacity;
3. Past and future physical and mental pain and suffering;
4. Past and future loss of household services;
5. Loss of enjoyment of life;[8]

Plaintiff also seeks to recover maintenance and cure benefits.[9]

Discovery having been completed on July 17, 2018,[10] Defendants timely filed the instant motion for summary judgment on July 24, 2018.[11] In their motion, Defendants first argue there is no evidence on the record, other than Plaintiff's own testimony, to support Plaintiff's allegation that the December 27, 2015 accident took place.[12] Alternatively, Defendants argue that, even if Plaintiff did sustain injuries on December 27, 2015, Plaintiff's accident was not the result of Defendants' negligence or the unseaworthiness of the M/V ERIN W.[13]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

[7] *Id.* at VIII.
[8] *Id.* at X.
[9] *Id.* at XII.
[10] R. Doc. 37 at 8.
[11] R. Docs. 49, 37 at 8.
[12] R. Doc. 49-1 at 1.
[13] *Id.* at 1–2.
[14] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[15] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[16] All reasonable inferences are drawn in favor of the non-moving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[18]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[19]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to

---

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[19] *Celotex*, 477 U.S. at 322–24.

establish an essential element of the non-movant's claim.[20] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[21] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[22] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[23]

### III.  LAW AND ANALYSIS

As the moving party, it is Defendants' burden to establish the absence of any genuine issues of material fact and that they are entitled to judgment as a matter of law. In their motion for summary judgment, Defendants first argue Plaintiff will not be able to establish the alleged accident caused his injuries because, other than his own "self-serving" testimony, Plaintiff has no evidence that the December 27, 2015 accident actually occurred.[24] Alternatively, Defendants submit, even if Plaintiff was injured while working aboard the M/V ERIN W on December 27, 2015, his injuries were not caused by

---

[20] *Id.* at 331–32 (Brennan, J., dissenting).
[21] *See id.* at 332.
[22] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[23] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[24] R. Doc. 49-1 at 1.

Defendants' negligence or the vessel's unseaworthiness.[25] The Court considers each argument in turn.

### A. Plaintiffs own sworn statement that an accident he suffered while working on the M/V ERIN W caused his injuries is sufficient in this case to defeat Defendants' summary judgment motion

To maintain a claim under the Jones Act, a plaintiff must prove not only that his employer's negligence caused his injury, but also that he was injured while acting "in the course of his employment."[26] Thus, it is axiomatic that, at trial, Plaintiff would bear the burden of proving he suffered an injury December 27, 2015. In a Jones Act case, "[t]he jury is entitled to make permissible inferences from unexplained events."[27] A party seeking summary judgment, however, may rely upon the complete absence of proof of an essential element of the other party's cause.[28] "[T]he movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent."[29]

In support of their argument that Plaintiff has no competent summary judgment evidence to support his allegation that he actually suffered an injury on December 27, 2015, Defendants point out that Plaintiff's only evidence the incident occurred is his own "self-serving, uncorroborated [sworn testimony]," which, according to Defendants, does not create a genuine issue of fact for trial.

Defendants also point to affirmative evidence on the record they contend refutes Plaintiff's assertion that he was injured on December 27, 2015. Defendants point out that,

---

[25] *Id.* at 1–2.
[26] *Schillage v. Tidewater Crewing Ltd.*, No. 93–2710, 1995 WL 72768, at *3 (E.D. La. 1995) (citing 46 U.S.C. § 688).
[27] *Id.* (citing *Johnson v. United States*, 333 U.S. 46, 49 (1948)).
[28] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1196 (5th Cir. 1986).
[29] *Id.* (quoting 10A C. MILLER, A. WRIGHT, M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2727 at 130 (1983)).

despite allegedly suffering an injury on December 27, 2015, Plaintiff did not seek medical treatment for this alleged injury until March 3, 2016, after he allegedly reinjured his back having tripped on a tree stump. Defendants challenge Plaintiff's assertion that he did not seek medical care independently for his December 27, 2015 injury because Plaintiff believed he could not afford it, noting that just five days before the alleged incident, Plaintiff sought medical treatment at the Teche Regional Medical Center for an unrelated on-the-job injury and that Plaintiff was not required to pay the costs associated with that treatment. Finally, Defendants offer sworn statements from Plaintiff's co-workers, William Butler, Kirk Dardar, Jude Aucoin, and Scott Guilbeaux, each of whom denies the accident occurred.[30]

In his sworn statement, Aucoin testifies that if someone were injured on the vessel, protocol dictated that, as the land captain, he be notified of the injury.[31] Aucoin indicated he was never informed of Plaintiff's injury, either by Plaintiff or any other crew member.[32] He testified further that none of the captains aboard the vessel reported that Plaintiff was "having problems from a physical standpoint performing the duties of his job."[33] Similarly, Dardar testified he was on the vessel the day Plaintiff's alleged injury took place, but that "[Plaintiff] never reported [the incident] to [him]."[34] Dardar contends Plaintiff continued to work alongside him for "a number of other days" after the alleged incident with no indication Plaintiff had been injured.[35] Butler in his sworn statement explained

---

[30] R. Docs. 49-3, 49-4, 49-5, 64-2.
[31] R. Doc. 49-3 at 12:1–15; *see also* R. Doc. 59-4 at 10:1–3 ("If the incidence . . . [had] happened, I would have stopped everything and called Judge [Aucoin] and got [Plaintiff] picked up and sent to the doctor.").
[32] R. Doc. 49-3 at 12:1–5.
[33] *Id.* at 12:13–14.
[34] R. Doc. 49-5 at 9:23–10:3.
[35] *Id.* at 11:1–22.

Plaintiff told him he was injured when he fell out of bed.[36] According to Butler, he visited Plaintiff on-shore and that when "[Butler] was leaving, [Plaintiff] was out there throwing a little kid in the air" and that, from Butler's perspective, Plaintiff "didn't look hurt."[37]

Finally, Guilbeaux, who served as captain aboard the M/V ERIN W on December 27, 2015 and who was on duty at the time the incident took place, testified Plaintiff never reported any injury to him and that "[a]s captain and supervisor of [Plaintiff] from December 23, 2015 to December 29, 2015, [he] observed [Plaintiff] performing deckhand work without difficulty and at no time did he appear to be injured."[38] Guilbeaux testified further that Plaintiff told him "he would file a lawsuit against T &M Boat Rentals, LLC if [Plaintiff were] ever fired from his employment, in an attempt to recover money for an accident that did not occur."[39] Notably, Plaintiff was terminated from his employment with T&M in March of 2016.[40]

Having offered significant evidence to support their argument that the incident Plaintiff alleges never actually took place, Defendants have borne their initial summary judgment burden. Thus, to defeat Defendants' summary judgment motion, Plaintiff must direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed remain for trial.[41]

---

[36] R. Doc. 49-4 at 8:8–23.
[37] *Id.* at 10:19–20.
[38] R. Doc. 64-2 at ¶¶ 7–9.
[39] *Id.* at ¶ 12.
[40] R. Doc. 49-2 at 112:24–116:23.
[41] *Celotex*, 477 U.S. at 322–24.

Plaintiff points to his own deposition testimony, wherein he explains he was injured on December 27, 2015 when he attempted to pull a cable from the water.[42] Plaintiff testified that, because the cable was partly in the water, he:

> had to stoop down with a spike pole and pull a line out the water. And when I get it half up, because there's no way you can bring it all the way up like this, so I had to get down, grab the eye of the cable, and pull it up. And as I was pulling up, pop, pop, pop.[43]

He testified further that he reported his accident to T&M employees immediately and that, once ashore, he informed Aucoin of his injury.[44] He also submits he "kept telling [Aucoin he] needed to go to the doctor," but that he "[n]ever got sent to the doctor," despite "ask[ing] three times."[45] Plaintiff contends that his testimony "regarding the facts and circumstances of his accident is unrefuted," and that, at the very least, his sworn statement is sufficient to create a genuine issue of material fact. Plaintiff argues further that "[n]one of the witnesses put forward by the defendants can attest that Mr. Henderson did not have an accident; they were not present at the time the accident occurred, and may be biased against [him]."[46]

The issue before the Court, therefore, is whether Plaintiff's own deposition testimony is sufficient to overcome Defendants' motion for summary judgment, in light of the evidence Defendants offer to refute Plaintiff's allegation.

Defendants contend that when the moving party provides the court with "overwhelming documentary evidence" supporting its version of events over the non-moving party's, "[the non-moving] party's uncorroborated self-serving testimony cannot

---

[42] R. Doc. 59-2 at 187:1–25.
[43] R. Doc. 49-2 at 99:1–5.
[44] *Id.* at 112:24–116:23.
[45] *Id.* at 95:12–19.
[46] R. Doc. 59 at 10.

8

prevent summary judgment."[47] Defendants cite *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust* in support of their assertion.[48] In *Vinewood*, the parties disputed the terms of a business deal, most of which had been reduced to writing.[49] According to the plaintiff, in addition to their written agreement, the defendant also had verbally committed to making $100 million in real estate investments.[50] The defendant moved for summary judgment on plaintiff's claim, offering several pieces of evidence indicating no such verbal agreement existed. As the Fifth Circuit detailed:

> [T]he record is replete with documentary evidence, much of it produced by principals of [the plaintiff], that proposes a business relationship with defendants with no mention of the alleged oral agreement. In fact, correspondence sent by the plaintiff immediately after the Geneva meeting describes an agreement giving DMI full discretion to accept or reject any particular project generated by plaintiff. The Financing MOU echoes those terms describing DMI's right of first refusal on all real estate investments [the plaintiff] presents, specifically stating that DMI would "have no obligation whatsoever to participate or become involved in such transactions." Neither the Settlement Agreement nor the Special Purpose Mudaraba Agreement contain any provision obligating DMI to participate in any real estate investments offered by [the plaintiff]. In addition, even if we assume that an oral agreement was formed in Geneva, the release language in the Settlement Agreement and the merger clauses in the Settlement Agreement and the Mudaraba Agreement would negate that agreement. Months later, after the parties met in London in December 2004, Conrad continued to describe DMI's obligation to fund proposed projects as optional.[51]

In opposition to the defendant's summary judgment evidence, the plaintiff offered the "uncorroborated[,] self-serving testimony" of its officer, who reiterated the plaintiff's allegation that the defendant had verbally pledged $100 million in investments. The Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendants,

---

[47] R. Doc. 49-1 at 6.
[48] 541 F. App'x 443, 447 (5th Cir. 2013).
[49] *Id.*
[50] *Id.*
[51] *Id.* at 448.

concluding the officer's "self-serving testimony is belied by the parties' contemporaneous written communications and written agreements and is therefore insufficient to create an issue of fact."[52]

In this case, the evidence Defendants offer to contradict Plaintiff's assertions is not so overwhelming that Plaintiff's sworn testimony fails to create a genuine issue of fact. Unlike the evidence in this case, the evidence in *Vinewood* directly contradicted the plaintiff's allegations. In the instant matter, however, the evidence Defendants offer is only circumstantial and at best shows there were no witnesses to Plaintiff's accident, an accident he contends he reported but which was ignored. Because the Court may not make credibility determinations at the summary judgment stage and Defendants' evidence is not so overwhelming as to warrant summary judgment, the Court concludes Plaintiff has created a genuine issue of material fact with respect to whether his December 27, 2015 injury occurred as he has testified.

As the Fifth Circuit explained in *C.R. Pittman Construction Company, Inc. v. National Fire Insurance Company of Hartland*, "[a] party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone. . . . If all "self-serving" testimony were excluded from trials, they would be short indeed."[53] Rather, "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."[54]

---

[52] *Id.*
[53] 453 F. App'x 439, 443 (5th Cir. 2011) (citing *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded by* FED.R.EVID. 103(a) on other grounds as recognized in Mathis v. Exxon Corp., 302 F.3d 448, 459 n. 16 (5th Cir.2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional.")).
[54] *Id.*

In this case, Plaintiff's testimony stems from his personal knowledge of the incident. Although it is arguably self-serving and the evidence Defendants offer puts Plaintiff's credibility into question, at the summary judgment stage the Court may not make credibility determinations, weigh evidence, or resolve factual disputes.[55] "[S]o long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion."[56] The Court's only task at this stage is to assess whether "a genuine issue of material fact" remains for resolution at trial.[57] As a result, the Court will not grant Defendants summary judgment based on their argument that Plaintiff was not injured on the M/V ERIN W while working as a Jones Act seaman on December 27, 2015.

Because the issue of whether Plaintiff was actually injured on December 27, 2015 remains for trial, the Court will deny Defendants' motion for summary judgment to the extent it seeks dismissal of Plaintiff's claim for maintenance and cure benefits. In their reply, Defendants agree that, in the event the Court concludes Plaintiff has met his burden of proving he was injured on December 27, 2015, dismissal of this claim is premature.[58] "Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship."[59] To receive maintenance and cure, a plaintiff must prove (1) his employment as a seaman; (2) that his illness or injury "occurred, was aggravated or manifested itself while in the ship's

---

[55] *MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).
[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[57] *Celotex Corp.*, 477 U.S. at 322–23; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).
[58] R. Doc. 64 at 7 ("Defendants' Motion acknowledges that if the Court finds a genuine issue of fact exists as to whether or not Plaintiff was injured on December 27, 2015, but determines that there is insufficient evidence to carry his burden of proving negligence or unseaworthiness, his maintenance and cure claim would survive.").
[59] *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002).

service," (3) the wages to which he may be entitled; and (4) "the expenditures or liability incurred by him for medicines, nursing care, board and lodging."[60] "When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits."[61] Because Plaintiff has offered sufficient evidence that he was injured while in the service of the M/V ERIN W, the only element of Plaintiff's maintenance and cure claim Defendants challenge, summary judgment on this claim is not appropriate at this time.

### B. Defendants are entitled to summary judgment on Plaintiff's negligence and unseaworthiness claims

Defendants argue in the alternative that, even if Plaintiff has offered sufficient evidence to create a disputed issue of fact as to whether the incident occurred, he is unable to bear his burden of demonstrating Defendants' negligence or the unseaworthiness of the M/V ERIN W contributed in any way to Plaintiff's injury. Thus, Defendants contend, they are entitled to summary judgment on these claims.

#### 1. Negligence

The Jones Act provides a seaman a cause of action for injuries he sustained as a result of his employer's negligence.[62] To establish causation under the Jones Act, a plaintiff bears a "featherweight" burden of proof.[63] Thus, a seaman may recover under the Jones Act if his employer's negligence contributed to his injury, even in the slightest degree.[64] Although the burden of proving causation is slight, a Jones Act plaintiff must nevertheless offer some evidence of his employer's negligence to prevail at trial.

---

[60] *Smith v. Fla. Marine Transporters, Inc.*, No. 10-889, 2011 WL 2580625, at *2 (E.D. La. June 29, 2011).
[61] *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La. 2013).
[62] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).
[63] *Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992).
[64] *Gautreaux*, 107 F.3d at 335; *see also In re Cooper/T. Smith*, 929 F.2d 1073, 1076-77 (5th Cir. 1991) (citing *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984) (""Under the Jones Act, a defendant

In this case, Plaintiff testified that on December 27, 2015, he was working a hitch as a deckhand when he injured his back while attempting to pull a cable that was partially in the water.[65] In support of their summary judgment motion, Defendants submit "[t]here is no evidence . . . the cable presented an unsafe condition or that T&M knew or should have known about it."[66] In opposition, Plaintiff merely points to his own testimony that he did not place the cable in the water, and that his injuries, therefore, were caused by the incompetence of a fellow crewmember.[67]

It is undisputed that "[t]he tool that Plaintiff was provided to accomplish the wire-pulling task was the right tool for the job."[68] It is also undisputed that "[t]he wire that Plaintiff was attempting to lift at the time of the [i]ncident weighed approximately 40 to 50 pounds,"[69] and that lifting the wire was a "one man job."[70] Further, Plaintiff testified he was provided with adequate training on how to perform this particular task.[71] Plaintiff also testified there was nothing wrong with the vessel and it was a clean and safe working environment,[72] and he did not blame any of his fellow crewmembers for the accident.[73] Finally, in his deposition, Plaintiff testified he had "no idea" why his accident occurred.[74]

Based on the record currently before the Court, there is no evidence of Defendants' negligence. Plaintiff cannot point to: (1) a violation of some regulation; (2) evidence that

---

must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury.")).
[65] R. Doc. 49-2 at 98:23–99:9.
[66] R. Doc. 49-1 at 9.
[67] R. Doc. 59-2 at 186:17–187:20.
[68] R. Doc. 49-8 at ¶ 17; R. Doc. 59-8 at ¶ 17.
[69] R. Doc. 49-8 at ¶ 18; R. Doc. 59-8 at ¶ 18.
[70] R. Doc. 49-8 at ¶ 15; R. Doc. 59-8 at ¶ 15. The Court notes Plaintiff disputes this fact, in part, but only "insofar as it speaks to the job of lifting the cable under normal circumstances." *Id.*
[71] R. Doc. 49-2 at 95:20–96:3; 179:25–180:2.
[72] *Id.* at 179:19-20.
[73] *Id.* at 178:12-179:1.
[74] *Id.* at 178:1-11.

there had been other injuries resulting from crewmembers attempting to lift a cable out of the water; or (3) expert testimony that the submerged cable presented an unsafe condition.[75] Because Plaintiff has wholly failed to offer any evidence to show that the partially submerged cable constituted an unsafe condition, the Court will grant summary judgment as to Plaintiff's negligence claim.

2. **Unseaworthiness**

To prevail on an unseaworthiness claim, a plaintiff must first show the vessel was unseaworthy. A vessel's unseaworthiness may arise from several circumstances, including defective gear, appurtenances in disrepair, an unfit crew, an improper method of loading cargo, or an insufficient number of workers assigned to a task.[76] Once the plaintiff demonstrates the vessel's unseaworthiness, he must also show that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result of a reasonably probable consequence of the unseaworthiness."[77]

Defendants again argue Plaintiff has no evidence the cable being left partially in the water rendered the M/V ERIN W unseaworthy, let alone evidence that a back injury is a reasonably probable consequence of lifting a submerged cable. Like his negligence claim, Plaintiff offers nothing beyond his conclusory assertion that the cable being

---

[75] *See Thomas v. Hercules Offshore Servs., LLC*, 713 F. App'x 382, 386 (5th Cir. 2018) (citing *Jussila v. M/T La. Brimstone*, 691 F.2d 217 (5th Cir. 1982) (affirming the denial of a motion for directed verdict because the seaman and the shipowner provided expert witness testimony regarding whether a metal rim that arose vertically from the deck constituted an unsafe condition, which demonstrated that reasonable minds could differ as to the shipowner's negligence)) ("The district court ruled that there was no evidence of Hercules's negligence because Thomas could point to no: (1) violation of a Coast Guard regulation; (2) evidence that there had been other incidents of tripping over the raised doorsill; or (3) expert testimony that the raised doorsill was an unsafe condition.3 We agree. Because Thomas wholly failed to offer any evidence to show that the raised doorsill constituted an unsafe condition, the district court properly granted summary judgment as to the negligence claim brought under the Jones Act.").
[76] *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).
[77] *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

partially in the water creates an unseaworthy condition. As a result, the Court concludes Plaintiff has failed to create a genuine issue of fact with respect to whether the partially submerged wire rendered the vessel unseaworthy. Defendants are entitled to summary judgment on this claim.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Defendants Catlin Indemnity Company; Mr. Spotty L.L.C.; and T&M Boat Rentals, LLC.'s motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.[78] With respect to Plaintiff Henderson's Jones Act negligence and unseaworthiness claims, the motion for summary judgment is **GRANTED**. With respect to Plaintiff's claims for maintenance and cure benefits, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that there be judgment in favor of Defendants and against Plaintiff with respect to Plaintiff's Jones Act negligence and unseaworthiness claims.

New Orleans, Louisiana, this 9th day of August, 2018.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[78] R. Doc. 49.